UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MALCOLM FAULKNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO: 2:04-CV-34 PS |
| | ) | |
| BETHLEHEM STEEL/ | ) | |
| INTERNATIONAL STEEL GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is currently before the Court on the Defendant's Motion for Summary Judgment. Plaintiff Malcolm Faulkner brought this action against Bethlehem Steel/International Steel Group for alleged racially discriminatory hiring practices in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Because Faulkner is attempting to bring claims that should have been brought in the bankruptcy proceeding, the Court hereby grants International Steel Group's Motion for Summary Judgment.

**I. BACKGROUND**

Plaintiff Malcolm Faulkner, an African-American male, began his employment with Bethlehem Steel Corporation ("Bethlehem") as coiler foreman in the Burns Harbor, Indiana plant on July 21, 1997. Approximately seven months later, Faulkner assumed the position of turn foreman in the hot mill. Faulkner held this position until April 30, 2003, at which time he was laid off by Bethlehem in the course of a plant-wide reduction in force. All employees of Bethlehem's Burns Harbor plant were laid off on April 30, 2003.

Prior to the layoffs, International Steel Group ("ISG") and Bethlehem were negotiating the sale of Bethlehem's assets to ISG through a bankruptcy proceeding.  In the course of its due diligence investigation, ISG proposed an organizational structure to Bethlehem which would reduce Bethlehem's workforce in the hot mill department and rolling operations from twenty-nine employees to twelve.  Faulkner was a member of the rolling department and therefore, subject to the proposed reduction in force.  Bethlehem began an evaluation process of the employees in the departments affected by the proposed reduction in force.  Criteria used to evaluate the employees' qualifications included leadership, communication, decision-making, control, sense of urgency and technical expertise.  Bethlehem determined Faulkner to be the least qualified of the foremen in his department and made these evaluations known to ISG.

Thereafter, Bethlehem filed for bankruptcy with the United States Bankruptcy Court for the Southern District of New York.  *In re Bethlehem Steel Corp., et al.,* Ch. 11 Case Nos. 01-15288 through 0115302, 01-15308 through 01-15315 (Bankr. S.D.N.Y. 2003).  On April 23, 2003, the Bankruptcy Court issued an Order Authorizing the: (1) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims and Encumbrances; (2) Assumption and Assignment of Certain Executory Contracts; and (3) Assumption of Certain Liabilities ("the Sale Order").  This Sale Order authorized, among other things, the sale of Bethlehem's assets to Defendant International Steel Group "free and clear of liens, claims and encumbrances."  On May 7, 2003, ISG purchased certain of Bethlehem's assets, including the Burns Harbor integrated steel plant where Faulkner had been employed.

In approving the sale of Bethlehem's assets to ISG, the Bankruptcy Court found that: (1) proper, timely, adequate and sufficient notice of the sale of Bethlehem's assets had been provided such that no further notice was required; (2) Bethlehem exercised its proper authority

2

to consummate the asset purchase agreement, such that no further consents or approvals were required; (3) ISG was a good faith purchaser under section 363(m) of the Bankruptcy Code; (4) the transfer of Bethlehem's assets to ISG would vest ISG with all right, title, and interest in those assets free and clear of any other interests, claims or liens – including any claims arising under successor liability; (5) ISG would not have entered into the asset purchase agreement if the assets were not transferred "free and clear of all Interests of any kind or nature whatsoever," or if ISG could be liable in the future for any Interests, including any employment or labor agreements and any employment-related claims, such as those arising under Title VII of the Civil Rights Act of 1964; and (6) those holders of Interests who did not object, or who withdrew their objections, to the sale of the assets are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

The Bankruptcy Court then held that ISG could not be deemed a successor in interest with respect to any interest against or in Bethlehem and declared that "all persons holding Interests against or in the Sellers . . . of any kind or nature whatsoever . . . shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature whatsoever against ISG, its property, its successors and assigns, or the Acquired Assets, as an alleged successor or otherwise."  (Sale Order at par. 34).

ISG reopened the Burns Harbor plant and began accepting applications for employment.  Some of the previous Bethlehem employees were hired by ISG based on their qualifications and areas of expertise.  Faulkner was not hired by ISG; nor were over one hundred other Bethlehem employees, many of whom were white.

On May 5, 2003, Faulkner filed an Equal Employment Opportunity Commission charge claiming that his layoff was the result of racial discrimination and retaliation for his filing of previous EEOC charges.  The EEOC investigated Faulkner's charge and issued a Notice of Right to Sue letter on October 31, 2003, finding that the EEOC was unable to conclude that ISG discriminated against Faulkner.  On January 29, 2004, Faulkner filed his Complaint in this Court alleging racial discrimination in violation of Title VII and 42 U.S.C. § 1981.

## II.  DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party.  *Doe v. R.R. Donnelly & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  The non-moving party must then set forth specific facts showing there is genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).  A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-23 (1986).

In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party.  *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 497 (7th Cir. 1999).  The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits.  *Celotex*, 477 U.S. at 324.  The plain language of Rule 56(c) mandates

the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. The productions of only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Anderson*, 477 U.S. at 252.

Faulkner's Complaint attempts to bring claims of racial discrimination that he allegedly suffered at the hands of Bethlehem, his former employer. Faulkner was terminated when Bethlehem closed its doors and filed for bankruptcy. ISG subsequently bought Bethlehem's assets and reopened the plant. Due to ISG's purchase of Bethlehem, Faulkner has asserted his claims against ISG under an apparent theory of successor liability.

It is well established that Section 363(f) of the Bankruptcy Code authorizes bankruptcy courts, under any one of five prescribed conditions, to authorize the sale of a bankrupt's assets "free and clear of any interest in such property of an entity other than the estate." 11 U.S.C. § 363(f). Courts have interpreted the phrase "interest in such property" broadly, protecting purchasers of a bankrupt's assets from claims against that bankrupt seller. *See e.g. In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3rd Cir. 2003) (holding that employment-related claims qualify as an "interest in property" in the sense that "[h]ad TWA not invested in airline assets, which required the employment of the EEOC claimants, those successor liability claims would not have arisen."); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 586-87 (4th Cir. 1996) (holding that two employer-sponsored benefit plans that sought to collect premium payments arising under the Coal Act from the debtors' successors in interest were asserting interests in property that had already been sold pursuant to Section 363(f)); *Myers v. U.S.*, 297 B.R. 774, 781 (S.D. Cal. 2003); cf. *In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987)

("General unsecured claimants including tort claimants, have no specific interest in a debtor's property. Therefore Section 363 is inapplicable for sale free and clear of such claims.").

The Sale Order of the Bankruptcy Court authorizing and approving the sale of Bethlehem's assets to ISG states that "[u]nder no circumstances shall ISG be deemed a successor of or to the Sellers for any Interest against or in the Sellers" and that ISG acquired Bethlehem's assets "free and clear of all Interests of any kind or nature whatsoever." Similar to the employment-related claims of *Leckie* and *TWA*, Faulkner's discrimination claim is an "interest in such property" for purposes of Section 363(f) in the sense that Faulkner's claim only arises from the very Bethlehem assets that were sold. Thus, the Bankruptcy Court authorized the sale of Bethlehem's assets to ISG "free and clear" of Faulkner's claim against Bethlehem.

Faulkner cites a number of cases for the proposition that successor liability applies in Title VII and § 1981 cases. This is, of course, true under some circumstances. But none of the cases he cites involved a sale approved by a bankruptcy court, which is the case currently before the Court. In other words, Faulkner's cases do not stand for the proposition that Title VII and § 1981 trump the principles of bankruptcy law applicable here, and the Court was unable to find any Seventh Circuit cases that so hold. In the absence of such authority, the Court adopts the analysis set forth by the Third Circuit in *TWA*. In affirming the sale of a bankrupt's assets free and clear of certain Title VII claims, the *TWA* court explained that allowing Title VII plaintiffs to seek successor liability from the purchaser of the bankrupt's assets would subvert the overall scheme of the Bankruptcy Code: "To allow the claimants to assert successor liability claims against [the purchaser] while limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent with the Bankruptcy Code's priority scheme." *TWA*, 322 F.3d at 292. As the court explained, the other difficulty with adopting Plaintiff's position is that trustees would

face an uphill battle in liquidating the bankrupt's estate.  If the trustee cannot transfer title to the bankrupt's assets free of all claims, prospective purchasers will probably not be willing to pay a fair price for the property, reducing the amount available to distribute to creditors.  *Id.*  For these same reasons, the Court finds that 11 U.S.C. §363(f) gave the bankruptcy court in this case the authority to transfer these assets free and clear of the claims made by Faulkner.

As such, the Court finds that ISG cannot be liable to Faulkner as a successor in interest to Bethlehem for a discharge dispute that arose between Faulkner and Bethlehem.

### III.  CONCLUSION

Because ISG purchased the assets of Bethlehem free and clear of any Interests against Bethlehem, International Steel Group's Motion for Summary Judgment [Doc. No. 14] is **GRANTED**.  The clerk shall **ENTER FINAL JUDGMENT** in favor of International Steel Group stating that Malcolm Faulkner is entitled to no relief.  The clerk shall treat this civil action as **TERMINATED.**  All further settings in this action are hereby **VACATED.**

**SO ORDERED.**

ENTERED: April 27, 2005

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
